UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA RODRIGUEZ, an individual,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>RESIDENCE INN BY MARRIOTT, LLC, a corporation; MAVIS AMBROSIO, an individual; and DOES 1-100, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 3:23-cv-01504-JAH-BGS<br><br>**ORDER:**<br><br>**(1) DISCHARGING ORDER TO SHOW CAUSE [ECF NO. 5]; AND**<br><br>**(2) DENYING MOTION TO REMAND TO STATE COURT [ECF NO. 7]** |

## **INTRODUCTION**

Pending before the Court are the parties' responses to the Court's order to show cause ("OSC") regarding subject matter jurisdiction and Plaintiff Lisa Rodriguez's ("Plaintiff") motion to remand to state court ("Motion"). ("Remand Mot."; ECF No. 7). After careful consideration of the entire record, the parties' arguments, the applicable law, and for the reasons set forth below, the Court **DISCHARGES** the OSC and **DENIES** Plaintiff's Motion.

/ / /

/ / /

/ / /

# BACKGROUND

## I. Procedural History

On May 17, 2023, Plaintiff filed this case in the Superior Court of the State of California, County of San Diego, against her former employer, Defendant Residence Inn By Marriott, LLC ("the Marriott"), and her former Assistant General Manager, Defendant Mavis Ambrosio ("Ambrosio") (collectively, "Defendants") for violations of the California Labor Code, Business and Professions Code, and Industrial Welfare Commission Wage Orders. ("Pl.'s Compl."; ECF No. 7-1 at 5-18).

On August 16, 2023, Defendants removed the case to the United States District Court for the Southern District of California based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. ("Removal Notice"; ECF No. 1). Plaintiff and Ambrosio are citizens of California; the Marriott is a citizen of Maryland and Delaware. (*Id.* at 3-4; Pl.'s Compl. at 5-6). Although Ambrosio's citizenship would defeat diversity because he and Plaintiff are both citizens of California, the Marriott argues Ambrosio was fraudulently joined and should therefore be disregarded for purposes of determining diversity jurisdiction. (Removal Notice at 4-7).

On August 18, 2023, the Court issued an OSC for why the case should not be remanded for lack of subject matter jurisdiction and ordered briefing from the parties on the issues of subject matter jurisdiction and fraudulent joinder. (ECF No. 5). On September 15, 2023, the Marriott filed a response to the OSC. ("Marriott OSC Resp."; ECF No. 6). On October 6, 2023, Plaintiff filed a response to the OSC and motion to remand to state court, to which the Marriott replied. (Remand Mot.; "Marriott Reply"; ECF No. 8). On October 25, 2023, the Court held a hearing and heard oral arguments from the parties. (ECF No. 9).

## II. Factual Background[1]

---

[1] The facts herein are from Plaintiff's complaint and are not to be construed as findings of fact by this Court.

On or about August 19, 2017, Plaintiff began working for the Marriott at its Residence Inn San Diego Sorrento Mesa/Sorrento Valley hotel ("Marriott San Diego") as a non-exempt Night Auditor at an hourly rate of $21.30. (Pl.'s Compl. at ¶¶ 2, 8, 13). Ambrosio was Marriott San Diego's Assistant General Manager. (*Id.* at ¶ 3). Plaintiff alleges that Defendants withheld her overtime compensation when she worked more than eight hours in a workday. (*Id.* at ¶¶ 9-10, 14, 49-58). When Plaintiff complained of her missing overtime wages, she was informed that she "maxed out" her overtime and was not owed any compensation. (*Id.* at ¶10). Plaintiff alleges that in retaliation for these complaints, the Marriott terminated her employment on or around September 30, 2022.

Plaintiff further alleges that Defendants failed to provide her with all legally mandated respite periods. (*Id.* at ¶¶ 16, 67-77). Prior to December 2021, Plaintiff alleges that she missed an average of at least five meal periods and rest breaks per week due to the voluminous nature of her work, understaffing, and pressure from management to complete her work within her scheduled hours. (*Id.* at ¶ 16). Plaintiff alleges that Defendants engaged in a system of willful violations of labor laws, acting intentionally and with deliberate indifference and conscious disregard to Plaintiff's rights by failing to provide her off-duty meal periods, duty-free rest breaks, failing to keep and provide accurate and timely records of wages earned and other legally mandated records, requiring her to work through meal periods and off the clock, failing to pay overtime wages, and failing to timely pay her final wages following the termination of her employment. (*Id.* at ¶¶ 17, 49-58, 67-92). Plaintiff alleges that as a result of the retaliation and wrongful termination, she has suffered and continues to suffer severe emotional distress and anxiety. (*Id.* at ¶ 18).

Based on these allegations, Plaintiff asserts four causes of action against the Marriott for wrongful termination, retaliation, and unlawful business practices. (*Id.* at ¶¶ 22-48, 93-97). Plaintiff asserts six causes of action against the Marriott and Ambrosio for failure to pay overtime, minimum wage, and wages due upon termination; provide meal periods and rest breaks; and issue accurate and itemized wage statements ("wage and hour claims" or "wage and hour violations"). (*Id.* at ¶¶ 49-92).

# LEGAL STANDARD

The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 93–94 (1998). Removal jurisdiction is governed by 28 U.S.C. § 1441, *et seq.* A state court action can be removed if it could have originally been brought in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, a party invoking the federal removal statutes must establish jurisdiction by demonstrating the existence of: (1) a statutory basis; (2) a federal question; or (3) diversity of the parties. *See Mir v. Fosburg*, 646 F.2d 342, 345 (9th Cir. 1980). District courts must construe the removal statutes strictly against removal and resolve any uncertainty as to removability in favor of remanding the case to state court. *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). The burden is on the removing party to demonstrate federal subject matter jurisdiction over the case. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

Here, Defendants removed the action based upon diversity jurisdiction. To establish diversity jurisdiction, Defendants must show: (1) complete diversity among opposing parties; and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Defendants have the burden of establishing that removal is proper and must support its jurisdictional allegations with competent proof. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*); *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990).

# DISCUSSION

The parties do not dispute that there is complete diversity between Plaintiff and the Marriott, as they are citizens of different states and the amount in controversy exceeds $75,000. However, there is not complete diversity if Ambrosio is considered, as he and Plaintiff are both citizens of California. Defendant argues Ambrosio was fraudulently joined and should not be considered for purposes of determining diversity jurisdiction.

## I.     Fraudulent Joinder

"There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)).  As is relevant here, fraudulent joinder may be established the second way if the Marriott shows by clear and convincing evidence that Ambrosio "cannot be liable on any theory."  *See Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)); *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) ("Fraudulent joinder must be proven by clear and convincing evidence."). Accordingly, this Court must conduct a two-step inquiry in which it determines (1) whether there is any possibility that the state court would find that the complaint states a claim against Ambrosio, and (2) whether Plaintiff could potentially state a claim against Ambrosio in an amended complaint.  *Grancare*, 889 F.3d at 548–50 (citing *Hunter*, 582 F.3d at 1046).  If the answer to either of these questions is yes, then this Court must find that the joinder was proper and remand the case to state court.  *Id.*

### A.     The complaint fails to state a claim against Ambrosio

All of Plaintiff's claims against Ambrosio are reliant upon California Labor Code § 558.1, which provides:

> (a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.
>
> (b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

Cal. Lab. Code § 558.1(a)–(b).  Thus, for Plaintiff to state a claim against Ambrosio, he must be an owner, director, officer, or managing agent of the Marriott.  The parties agree

that Ambrosio is not an owner, director, or officer, but dispute whether he is a managing agent.

In *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 576–77 (1999), the California Supreme Court addressed the definition of a managing agent under Civil Code § 3294(b). There, the Court held that "supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents." *Id.* at 577. The Court reasoned that "the Legislature intended the term 'managing agent' to include only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." *Id.* at 566–67. "Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees. In order to demonstrate that an employee is a true managing agent under [Civil Code § 3294(b)], a plaintiff . . . would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *Id.* at 576–77. The Court emphasized that the scope of a corporate employee's discretion and authority is "a question of fact for decision on a case-by-case basis." *Id.* at 567

Following *White*, the California Supreme Court clarified that when it spoke "about persons having 'discretionary authority over . . . corporate policy' [the Court was] referring to formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 714–15 (2009) (internal citation omitted).

Since *White* and *Roby*, the California Court of Appeal has expounded on the definition of a managing agent. *See Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp., U.S.A.*, 221 Cal. App. 4th 867, 886 (2013) (holding that "the determination of whether certain employees are managing agents does not necessarily hinge on their level in the corporate hierarchy. Rather, the critical inquiry is the degree of discretion the employees possess in making decisions.") (internal quotation marks and citations omitted);

*see also CRST, Inc. v. Superior Ct.*, 11 Cal. App. 5th 1255, 1273 (2017) ("The key inquiry thus concerns the employee's authority to change or establish corporate policy."); *King v. U.S. Bank Nat'l Ass'n*, 53 Cal. App. 5th 675, 714 (2020) ("An employee exercising authority that results in the ad hoc formulation of policy is a managing agent."); *but see Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 554 (2020) ("[A] managing agent does not need to be a corporate policymaker and can formulate operational policies through discretionary decisions.").

Here, the Marriott argues that Ambrosio is not a managing agent. In support of its argument, the Marriott provides detailed declarations from Ambrosio, who has been an Assistant General Manager of Marriott San Diego since April 26, 2021, and Kathryn Lambert ("Lambert"), who has been the Marriott's Area Director of Human Resources since September 12, 2020. (Ambrosio Decl. at ¶¶ 1-2; Lambert Decl. at ¶¶ 1-2). As an Assistant General Manager, Ambrosio is familiar with the operations of Marriott San Diego, as well as the management structure and senior leadership of the Marriott. (Ambrosio Decl. at ¶¶ 2-3). As the Director of Human Resources, Lambert is familiar with the operations of the various Marriott hotels, as well as its corporate structure, leadership team, employee job duties, and the lines of reporting for employees. (Lambert Decl. at ¶ 2).

Ambrosio and Lambert declare that Ambrosio has never been an officer or director of the Marriott and has never played a role in setting corporate policy or been able to exercise any discretionary authority over decisions that ultimately determine company policy. (Ambrosio Decl. at ¶ 4; Lambert Decl. at ¶ 5). Rather, Ambrosio's duties have been strictly confined to the operation of the single hotel where he works, Marriott San Diego, which is one of approximately 70 hotel locations in the United States. (Ambrosio Decl. at ¶ 5; Lambert Decl. at ¶ 4-5). As the Assistant General Manager of Marriott San Diego, Ambrosio supports all aspects of that single hotel's operation, including guest services/night audit, housekeeping/laundry, food and beverage, maintenance, and vendor/supplies to ensure guest satisfaction while maximizing hotel profitability.

(Ambrosio Decl. at ¶ 5; Lambert Decl. at ¶ 5).

Lambert explains that each of the approximately 62 Assistant General Managers at the Marriott reports to about 57 General Managers, who in turn reports to one of 12 Regional Senior Directors of Operations and Owner Services, who in turn reports to an Area Vice President of Marriott Select Brands in the U.S., who in turn reports to the Senior Vice President of the U.S. Managed and Franchise Marriott Select Brands and Franchise Finance Business Partner. (Lambert Decl. at ¶ 4). Lambert declares that none of these individuals in the reporting structure are a director, officer, or managing agent for the Marriott. (*Id.*) Ambrosio and Lambert further explain that the majority of the Marriott's executive and administrative functions (including, but not limited to, operations, finance, accounting, human resources, benefits and compensation, marketing, legal, and information systems) occur at its corporate headquarters in Bethesda, Maryland, which is where the Marriott's senior leadership team directs, controls, and manages its business. (*Id.* at ¶¶ 6-7).

In the face of no evidence to the contrary, the Court finds that the declarations of Ambrosio and Lambert constitute clear and convincing evidence that Ambrosio is not a managing agent of the Marriott. The declarations contain a sufficiently detailed description of Ambrosio's job duties and responsibilities, as well as the confined nature, extent, and exercise of his authority and discretion as Marriott San Diego's Assistant General Manager, to support a reasonable inference that he did not "exercise[] substantial discretionary authority over significant aspects of [the Marriott's] business." *White*, 21 Cal. 4th at 577. The declarations provided by the Marriott also demonstrate that Ambrosio's authority was confined to Marriott San Diego, not all 70 hotels, and decisions concerning the determination of the Marriott's formal company-wide policies are made by its leadership team out of the corporate headquarters in Maryland.

While "the determination of whether certain employees are managing agents does not necessarily hinge on their level in the corporate hierarchy[,]" *Powerhouse Motorsports Grp.*, 221 Cal. App. 4th at 886, Plaintiff's complaint fails to allege any facts describing

Ambrosio's discretion and authority to affect, determine, change, establish, or formulate formal company policy so that he may be considered a managing agent pursuant to California Labor Code § 558.1.  Nor does Plaintiff's complaint allege that Ambrosio is a managing agent.  As a result, Plaintiff's complaint does not state a claim against Ambrosio as Plaintiff's theories of Ambrosio's individual liability requires that he be a managing agent of the Marriott.  (*See* Pl.'s Compl. at ¶ 4) ("Plaintiff alleges that [Ambrosio], acting on behalf of [the Marriott], violated Plaintiff's rights as set forth by the Industrial Welfare Commission and in the California Labor Code, and that he is individually liable for such violations pursuant to California Labor Code section 558.1.").

Plaintiff argues that it is "plausible" Ambrosio "could have had discretion, influence, and/or control in the implementation of [the Marriott]'s policies" and "Ambrosio could have had broad discretion and authority to exercise control over certain aspects of Plaintiff's employment, including but not limited to, when Plaintiff was allowed to take her meal periods and rest breaks, and Plaintiff's work schedule." (Remand Mot. at 6, 19-20).  However, Ambrosio's discretion and authority to *implement* the Marriott's policies and control Plaintiff's work schedule is not in line with the California Supreme Court's definition of a managing agent.  *White*, 21 Cal. 4th at 566–77; *Roby*, 47 Cal. 4th at 714–15.

In sum, the Court finds that Defendant has presented clear and convincing evidence Ambrosio is not a managing agent pursuant to California Labor Code § 558.1.  Additionally, there are no allegations in the complaint that could possibility establish that Ambrosio "exercises substantial discretionary authority" over the Marriott's corporate policy decisions.  *White*, 21 Cal. 4th at 573.  Based upon the evidence submitted by the Marriott, the absence of evidence to the contrary, and the absence of allegations in the complaint regarding Ambrosio's authority to affect the Marriott's formal corporate policies, the Court finds that there is no "possibility that a state court would find that the complaint states a cause of action" against Ambrosio for wage and hour violations.  *Grancare*, 889 F.3d at 548, 549 (citing *Hunter*, 582 F.3d at 1046).

### B. Leave to amend

Next, the Court must consider "whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 543. Plaintiff's complaint does not allege any theories of individual liability against Ambrosio that are not reliant upon his status as a managing agent of the Marriott pursuant to California Labor Code § 558.1. Nor does the complaint allege any facts that would support any other theories of liability beyond the asserted wage and hour claims. Moreover, while Plaintiff's motion to remand and response to the OSC repeatedly argues that it would not be impossible for Plaintiff to cure any potential deficiency in a future amendment, Plaintiff does not provide any proposed amendments for the Court to consider. Furthermore, when asked during oral argument, Plaintiff's counsel could not proffer other allegations that may be alleged if given an opportunity to amend the complaint. In light of the foregoing, the Court finds that the complaint's deficiencies related to Ambrosio's individual liability cannot be cured by granting Plaintiff leave to amend.

### CONCLUSION

For the reasons discussed, the Court finds that Ambrosio was fraudulently joined and does not consider Ambrosio's citizenship for purposes of determining diversity jurisdiction. Consequently, the Court finds that there is complete diversity between Plaintiff and the Marriott, and, therefore, the Court has subject matter jurisdiction over this case. Accordingly, Plaintiff's motion to remand is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 28, 2023

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE